O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CLAUDIA SHILLINGFORD, | ) | NO. CV 11-07191-MAN |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff filed a Complaint on September 6, 2011, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI").  On October 4, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  The parties filed a Joint Stipulation on July 6, 2012, in which:  plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding for further administrative proceedings; and the Commissioner requests that his decision be affirmed or, alternatively, remanded for further administrative proceedings.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On April 15, 2003 and August 11, 2004, it appears plaintiff filed an application for a period of disability, DIB, and SSI, alleging an inability to work since October 17, 2001 (Administrate Record ("A.R.") 100-07, 640), due to "[d]isorders of [m]uscle, [l]igament and [f]ascia" (A.R. 69).  Plaintiff has past relevant work experience as a "activity assistant," "caregiver," and "nurse's assistant.  (A.R. 847.)

The Commissioner denied plaintiff's application initially and upon reconsideration.  (*See* A.R. 69-71, 72-75.)[1]  On April 19, 2005, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Patti Hunter ("ALJ Hunter").  (A.R. 973-1005.)  Edward Bennett, a vocational expert ("VE"), also testified.  (*Id.*)  On June 29, 2005, ALJ Hunter issued a partially favorable decision, finding plaintiff disabled from February 22, 2002, through December 8, 2004.  (A.R. 670-78.)  Plaintiff appealed and requested that the Appeals Council review ALJ Hunter's decision.  (A.R. 688-92.)  Pursuant to a November 9, 2006 Order, the Appeals Council "vacate[d] the hearing decision, including the part that is favorable to [plaintiff], and remand[ed] this case for further proceedings."  (A.R. 686-87.)

On December 5, 2007, plaintiff, who was again represented by an attorney, appeared and testified at a second administrative hearing before ALJ Hunter.  (A.R. 1006-38.)  Medical expert Michael Gurvey and

---

[1]   These documents were not provided as part of the record.  (*See* A.R. 5.)

2

1   VE Sharon Spaventa also testified. (*Id.*) On February 22, 2008, ALJ
2   Hunter again issued a partially favorable decision, finding plaintiff
3   disabled from February 22, 2004, through December 8, 2004. (A.R. 811-
4   21.) Plaintiff appealed and requested review of ALJ Hunter's February
5   22, 2008 decision. (A.R. 34-36.) Pursuant to a June 25, 2009 Order,
6   the Appeals Council vacated "the hearing decision, including the part
7   that [wa]s favorable to [plaintiff], and remand[]ed]" the case to a new
8   ALJ.[2] (A.R. 823-25.)
9
10      On October 6, 2010, plaintiff, who was again represented by an
11  attorney, appeared and testified at a third administrative before ALJ
12  John Geb (the "ALJ"). (A.R. 1039-90.) Medical experts Diana Sharpe and
13  Harvey L. Alpern, as well as VE Sharon Spaventa, also testified at the
14  hearing. (*Id.*) On November 19, 2010, the ALJ issued a decision denying
15  plaintiff's claim (A.R. 22-30), and the Appeals Council subsequently
16  denied plaintiff's request for review of the ALJ's decision (A.R. 13-15,
17  17). That decision is now at issue in this action.
18
19                     **SUMMARY OF ADMINISTRATIVE DECISION**
20
21      In his November 19, 2010 decision, the ALJ incorporated by
22  reference the evaluation of evidence contained in ALJ Hunter's February
23  22, 2008 decision. (A.R. 22.) The ALJ found that plaintiff has not
24  engaged in substantial gainful activity since October 17, 2001, her
25  alleged onset date. (A.R. 24.) The ALJ determined that plaintiff has
26
27      [2]   "As this case was previously remanded to the same [ALJ -- *to*
    *wit*, ALJ Hunter], the Appeals Council direct[ed] that, upon remand, this
28  case be assigned to another [ALJ]." (A.R. 825.)

                                     3

the severe impairments of: "depressive disorder, NOS, rule out past history of anxiety in 2004 [and] 1998; [and] right shoulder pain, and left shoulder and knee pain, with no physical or x-ray findings." (A.R. 25.)   He concluded that such impairments, however, did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the Listing of Impairments. (A.R. 26.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (A.R. 27.) Specifically, the ALJ found that plaintiff has the ability to:

> lift and carry occasionally 20 pounds, and frequently 10 pounds, stand, walk and sit fo[]r at least 6 hours total in an 8-hour workday, moderate limitations in use of the right upper extremity, moderate postural limitations, no overhead use of the right upper extremity, no overhead lifting with both upper extremities; and moderate limitation in relating and interacting with supervisors and coworkers, understanding, remembering and carrying out an extensive variety of technical and/or complex job instructions, dealing with the public, maintaining concentration and attention for at least 2 hour increments, and in withstanding the stress and pressures associated with an 8-hour work day and day-to-day activity.

(A.R. 27.)

The ALJ found that plaintiff's past relevant work ("PRW") as a

4

1  "recreation aide," as she actually performed it, does not require the

2  performance of work-related activities precluded by plaintiff's RFC.

3  (A.R. 29.)  Accordingly, the ALJ concluded that plaintiff has not been

4  under a disability, as defined in the Social Security Act, since October

5  17, 2001, her alleged onset date, through November 19, 2010, the date of

6  his decision.  (A.R. 30.)

7

8                           **STANDARD OF REVIEW**

9

10      Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

11  decision to determine whether it is free from legal error and supported

12  by substantial evidence.  <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir.

13  2007).  Substantial evidence is "'such relevant evidence as a reasonable

14  mind might accept as adequate to support a conclusion.'"  *Id.* (citation

15  omitted).   The "evidence must be more than a mere scintilla but not

16  necessarily a preponderance."  <u>Connett v. Barnhart</u>, 340 F.3d 871, 873

17  (9th Cir. 2003).   "While inferences from the record can constitute

18  substantial evidence, only those 'reasonably drawn from the record' will

19  suffice."   <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir.

20  2006)(citation omitted).

21

22      Although this Court cannot substitute its discretion for that of

23  the Commissioner, the Court nonetheless must review the record as a

24  whole, "weighing both the evidence that supports and the evidence that

25  detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of</u>

26  <u>Health and Hum. Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also*

27  <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is

28  responsible for determining credibility, resolving conflicts in medical

5

testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ did not consider properly whether she could perform alternative work activity. (Joint Stipulation ("Joint Stip.") at 4.)

///
///
///
///
///
///
///

6

**I.    The ALJ Did Not Sufficiently Ascertain The Demands Of Plaintiff's PRW, And Thus, He Could Not Determine Properly Whether Plaintiff Could Return To Her PRW As Actually Performed.**

At step four, a social security disability claimant bears the burden of proving that she cannot perform either the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001)(quoting Social Security Ruling ("SSR") 82-61); see also Burch, 400 F.3d at 679. "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." Pinto, 249 F.3d at 844. "This is done by looking at the '[RFC] and the physical and mental demands' of the claimant's [PRW]." Id. at 844-45 (quoting 20 C.F.R. §§ 404.1520(e) and 416.920(e)); see also Villa v. Heckler, 797 F.2d 797-98 (9th Cir. 1986)("to determine whether a claimant has the [RFC] to perform h[er PRW], the Secretary must ascertain the demands of the claimant's former work and then compare the demands with h[er] present capacity [RFC]").

Plaintiff contends that the ALJ erred in determining that she could perform her PRW as a recreation aide, because according to the Dictionary of Occupational Titles ("DOT"), the job would require frequent reaching, which plaintiff contends is inconsistent with the ALJ's RFC limiting her to "[no] overhead use of the right upper extremity and no overhead lifting with both upper extremities." (Joint

7

Stip. at 5-12.)   Plaintiff contends the ALJ committed legal error, because he failed to question the VE adequately regarding the apparent deviation from the DOT requirements reflected in the VE's assessment that plaintiff is able to perform her PRW.   (*Id.*)

Defendant contends that there was no error, because the ALJ determined that plaintiff could perform the recreation aide job, not as it is *generally performed*, but as it was *actually performed* by plaintiff.[3]   (Joint Stip. at 13; *see also* A.R. 30.)   Defendant correctly asserts that "[p]laintiff's arguments based on the *generalized* DOT descriptions [of plaintiff's PRW] are completely inapposite." (Joint Stip. at 13; emphasis added.)   However, it is not clear defendant is correct in his assertion that "substantial evidence supports the ALJ's finding that [p]laintiff could work as a recreational aide *as actually performed*." (*Id.*; emphasis in original.)

Pursuant to the June 25, 2009 Order from the Appeals Council, the ALJ requested that VE Sharon Spaventa answer a number of interrogatories to obtain supplemental evidence to clarify the effect of plaintiff's RFC on her occupational base. (A.R. 824, 866-67, 870-73.) In response to the ALJ's questions, the VE noted that plaintiff had PRW as a "recreation aide" [citing DOT 195367030] and a "geriatric nurse

---

[3]   The ALJ's written opinion states that he found plaintiff capable of returning to her past work as a recreation aide as actually performed.   (A.R. 29-30.)   This finding is not, in and of itself, insufficient to warrant a finding of non-disability at step four. Pinto, 249 F.3d at 845 ("We have never required explicit findings at step four regarding a claimant's [PRW] both as generally performed *and* as actually performed")(emphasis in original).   To the extent plaintiff argues that the ALJ erred in finding that plaintiff could perform her PRW as a recreation aide as generally performed, that argument is misguided and does not reflect the ALJ's actual finding.

assistant" [citing DOT 355674014].  (A.R. 871.)  The VE further noted that plaintiff's PRW as a recreation aide required frequent "reach, handle, talk, [and] hear," while a geriatric nurse position required frequent "reach, handle, finger, feel, talk, hear [illegible]." (A.R. 872.)  The VE was also asked whether a hypothetical individual of the same age, education, training, and work experience as plaintiff and with plaintiff's limitations -- as described in the responses to "Written Questions to Medical Expert - Mental" and "Written Questions to Medical Expert - Physical"[4] -- could "perform any of the [PRW] . . . as it was performed by [plaintiff] or as it is done in the national economy." (*Id.*)  The VE responded "yes."  (*Id.*)  When asked to "indicate which jobs and whether [plaintiff] could perform [that work] as done in the past or as the work is performed in the national economy," the VE wrote "recreation aide" and the DOT number corresponding to that job.  (*Id.*) The VE did not specify, however, whether plaintiff could perform her PRW as it generally is performed or as actually performed by plaintiff. (*Id.*)  The VE also noted that her opinion did not conflict with the information in the DOT.  (A.R. 873.)

---

[4]    In response to questions regarding plaintiff's mental impairments, medical expert Diana Sharpe, M.D., opined that plaintiff was, *inter alia*, moderately limited in her ability to:  relate to and interact with supervisors and coworkers; understand, remember, and carry out an extensive variety of technical and/or complex job instructions; deal with the public; maintain concentration and attention for at least two hour increments; and withstand the stress and pressures associated with an eight-hour work day and day-to-day activity.  (A.R. 952-53.)

In response to questions regarding plaintiff's physical impairments, medical expert Harvey L. Alpern, M.D., opined that plaintiff was, *inter alia*, limited to lifting up to 20 pounds occasionally and 10 pounds frequently, standing/walking for at least six hours out of an eight-hour workday, sitting continuously at least six hours out of an eight-hour workday, and "no overhead [right upper extremity]."  (A.R. 958-59.)

At the October 6, 2010 hearing, the ALJ asked the VE Spaventa whether her answer to the above hypothetical would change if the additional limitation of "no overhead lifting bilaterally" were added. (A.R. 1068.)  The VE responded "no."  (*Id.*)  The VE further testified that plaintiff could perform her PRW as a recreation aide, despite her pain, as she is "performing it now on a part-time basis."[5]  (A.R. 1085, 1087.)

In his decision, the ALJ states:

The [VE] . . . indicated that a hypothetical individual of [plaintiff]'s age, education and vocational background, with the limitations identified . . ., could perform [plaintiff]'s [PRW] as a recreation aide *as actually performed* . . . .

At the hearing, the [VE] testified that her *above-noted response* that [plaintiff] could perform her past [PRW] would be the same even with the additional limitation of no overhead lifting with the bilateral upper extremities.

After comparing the [plaintiff]'s [RFC] with the physical and mental demands of this work, consistent with the [VE] interrogatory . . . , the undersigned finds that [plaintiff] is able to perform it as actually performed.

---

[5]  Plaintiff testified that, at the time of the hearing, she was employed at a nursing facility as a recreation aide working Saturday and Sunday every other weekend for eight hours each day.  (A.R. 1069, 1085.) She further testified that she was getting paid between $8.43 and $8.49 per hour.  (*Id.*)

10

1    (A.R. 29-30; emphasis added, citations omitted.)

2

3        The Social Security Rulings identify two sources of information

4    that may be used to define a claimant's PRW as actually performed:  a

5    properly completed vocational report, SSR 82-61; and the claimant's own

6    testimony, SSR 82-41.   "The claimant is the primary source for

7    vocational documentation, and statements by the claimant regarding [PRW]

8    are generally sufficient for determining the skill level, exertional

9    demands[,] and nonexertional demands of such work."  SSR 82-62.

10

11       At the hearing, plaintiff testified that she was working as a

12   recreation aide every other weekend for two days straight.  (A.R. 1069.)

13   Plaintiff testified that she had to go back to work for the

14   money.  (A.R. 1085.)   From the record, it appears that plaintiff

15   performed the amount and extent of work she was able to do with her

16   limited capabilities.[6]   Indeed, plaintiff testified that, after she

17   finishes her two days of work, she is in a lot of pain and needs to

18   "stay in bed and relax [her] shoulder."    (A.R. 1070-71.)

19   Notwithstanding this testimony by plaintiff, the ALJ failed "to make the

20   appropriate findings to insure that the claimant really can perform

21   . . . her [PRW]" on a full time basis.  Pinto, 249 F.3d at 845.  Indeed,

22   the ALJ did not sufficiently delve into the demands of plaintiff's work,

23   either as she was actually performing it at the time of the hearing or

24   previously.

25

26

27       [6]  "The Social Security Act does not require that claimants be
     utterly incapacitated to be eligible for benefits."  Fair v. Bowen, 885
28   F.2d 597, 603 (9th Cir. 1989).

The VE's relevant testimony is vague.  It does not, for example, specify what the VE deemed to be the demands of plaintiff's past work as she actually performed it -- beyond the broad conclusion that plaintiff performed the job as a recreation aide at the "light" level and "she deals with the residen[ts] a lot."  (A.R. 1086-87.)  No testimony was solicited from plaintiff or presented to the VE concerning the reaching and/or lifting demands of her work as a recreation aide as plaintiff actually performed that job.

The ALJ also did not rely on a vocational report pursuant to SSR 82-61 as an additional source to determine the demands of plaintiff's past work as a recreational aide, as actually performed, because the record did not contain such a report.  Instead, the record contained a "Disability Report," which only described the demands of plaintiff's past work as a nurse's assistant, not as a recreation aide.  (*See* A.R. 847-48.)

The ALJ thus had insufficient information to compare plaintiff's RFC to the demands of plaintiff's PRW as a recreation aide as she actually performed it.[7]  Past work experience "must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional

---

[7]    To the extent the ALJ was of the view that VE Spaventa's interrogatory response and subsequent testimony at the October 6, 2010 hearing was "consistent" with his determination that plaintiff was capable of performing her PRW as actually performed on a full-time basis, that view was improper.  Notably, while the ALJ is correct that VE Spaventa testified that plaintiff could perform her PRW as actually performed with the additional limitation of no overhead lifting with her bilateral upper extremities (A.R. 29-30), VE Spaventa only appeared to indicate, as noted *supra*, that plaintiff could perform her PRW as she is performing it now -- *to wit*, on a *part-time* basis (A.R. 1085-88).

activities" of past work.   SSR 82-62.   The ALJ's decision "must be developed and explained fully in the disability decision." *Id.*

As the ALJ did not make the requisite specific findings with respect to the demands of plaintiff's PRW as actually performed, and did not make any findings with respect to the relationship of plaintiff's RFC to that PRW as actually performed by plaintiff, the decision is insufficient in terms of the step four analysis, because it does not permit this Court to adequately determine the basis for the decision and whether substantial evidence supports the Commissioner's decision. *See* Lewin v. Schweiker, 654 F.2d 631, 634-35 (9th Cir. 1981); *see also,* Pinto, 249 F.3d at 847 ("Because the ALJ made very few findings and relied largely on the conclusions of the [VE], it is difficult for this Court to review his decision.").   Accordingly, reversal is required.

**II.   Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.   *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").   However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were

13

1    properly evaluated, remand is appropriate.  *Id.* at 1179-81.

2

3         Remand is the appropriate remedy to allow the ALJ the opportunity

4    to remedy the above-mentioned deficiencies and errors.  *See, e.g.*,

5    Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir.2004)(remand for further

6    proceedings is appropriate if enhancement of the record would be

7    useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.

8    1989)(remand appropriate to remedy defects in the record).

9

10        On remand, the ALJ should also carefully reconsider his tacit

11   finding that a period of disability from February 22, 2002, through

12   December 8, 2004, should not be granted.  In his decision, the ALJ

13   incorporated "the medical and non-medical evidence contained in the

14   prior decision issued on February 22, 2008 . . .[,] except to the extent

15   it [wa]s specifically modified or supplemented by []his

16   decision."  (A.R. 22.)  As noted in ALJ Hunter's February 22, 2008

17   decision, following a March 2001 subacromial decompression surgery for

18   a torn left rotator cuff, plaintiff "underwent right (dominant) shoulder

19   arthroscopic subacromial decompression surgery [for right shoulder

20   impingement syndrome] on February 22, 2002. Right shoulder surgery was

21   unsuccessful in alleviating [plaintiff]'s symptoms, and subsequently

22   bursitis and full-thickness tear of the subacromial tendon was

23   assessed."[8]  (A.R. 817.)  In addition, "[a] second surgery was

24   recommended, specifically open decompression and repair of the right

25   rotator cuff tendon."  (*Id.*)  Further, the relevant evidence from

26

27        [8]    In his Operative Report for plaintiff's February 22, 2002
     surgery, plaintiff's surgeon, William Gallivan, M.D., reported, *inter
28   alia*, that plaintiff's rotator cuff showed some fraying but no
     significant tearing. (A.R. 233-34.)

February 22, 2002, through December 8, 2004 -- evidence which the ALJ purportedly incorporated into his decision -- indicates that plaintiff was assessed with increased limitations and restrictions during this period.  For example, in her February 2008 decision, ALJ Hunter noted that C. Clayton Welborn, M.D., who treated plaintiff from October 2002, through March 2003, "reported that [plaintiff] was unable to lift/carry any weight and was unable to repetitively reach or perform fine manipulation with the right upper extremity."  (A.R. 817; internal citation omitted.)   Notwithstanding these increased limitations and restrictions, the ALJ does not offer any explanation as to why he, unlike ALJ Hunter,[9] did not find plaintiff to be disabled during the period from February 22, 2002, through December 8, 2004.  Accordingly, on remand, the ALJ should revisit whether a period of disability should be granted.

///

///

///

///

///

///

///

///

///

///

///

_____

[9]     ALJ Hunter twice found plaintiff to be disabled during the period from February 22, 2002, through December 8, 2004.  (A.R. 677, 817.)

1

**CONCLUSION**

2

3      Accordingly, for the reasons stated above, IT IS ORDERED that the

4  decision of the Commissioner is REVERSED, and this case is REMANDED for

5  further proceedings consistent with this Memorandum Opinion and Order.

6

7      IT IS FURTHER ORDERED that the Clerk of the Court shall serve

8  copies of this Memorandum Opinion and Order and the Judgment on counsel

9  for plaintiff and for defendant.

10

11      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

12

13  DATED:  August 30, 2012

14

15                                          _____

16                                            MARGARET A. NAGLE
                                            UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28